UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| PETER SULLIVAN,<br><br>    Plaintiff,<br><br>v.<br><br>KEVIN TANG and CLEAN SEAT, a Utah partnership, dba CLEANA,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [7] & [18] DEFENDANTS' MOTIONS TO DISMISS**<br><br>Case No. 2:25-cv-01120-DBB-CMR<br><br>District Judge David Barlow |

Before the court are Defendant Kevin Tang's motions to dismiss on behalf of himself[1] and on behalf of Defendant Clean Seat, an unregistered general partnership.[2]

**BACKGROUND**

This case arises from allegations that Plaintiff Peter Sullivan was wrongly denied his interest in a general partnership that he formed along with Mr. Tang.[3] The Complaint includes the following allegations:

In early 2019, Mr. Sullivan and Mr. Tang formed Clean Seat, a Utah general partnership, to develop a self-raising toilet seat product.[4] In June 2019, Mr. Sullivan and Mr. Tang were introduced as Clean Seat's proprietors at an event where they pitched the Clean Seat business and won a $1,600 prize.[5] In July 2019, Mr. Tang sent a series of emails regarding Clean Seat to a

---

[1] Kevin Tang Motion to Dismiss ("Tang MTD"), ECF No. 7, filed Dec. 18, 2025.
[2] Clean Seat Motion to Dismiss ("Clean Seat MTD"), ECF No. 18, filed Feb. 27, 2026.
[3] *See generally* Compl., ECF No. 1-2, filed Dec. 11, 2025.
[4] *Id.* ¶ 9.
[5] *Id.* ¶¶ 11–12, 26.

1

Ms. Anne Bastian at the University of Utah in which he referred to himself and Mr. Sullivan as partners.[6] In 2020, Mr. Sullivan and Mr. Tang created multiple "Pitch Deck/Executive Summary" presentations for Clean seat that referred to them as the founders of the business.[7] In 2021, Mr. Sullivan presented the Clean Seat product at other startup competitions and secured a total of $19,000 in funding, which he transferred into the Clean Seat venture.[8]

Although at least one of the presentation slide decks stated that the founders had assigned all product patent rights to a Clean Seat LLC entity, no such entity was ever formed.[9] However, the parties formed Cleana, Inc., ("Cleana") a Delaware corporation, on April 28, 2020.[10] Cleana was a successor entity to the Clean Seat Utah partnership.[11] By early 2021, Clean Seat had significant funding, its product was functioning, and its intellectual property and prototypes were in place.[12]

In April 2021, Mr. Sullivan provided Mr. Tang with notice of dissociation from the partnership.[13] The two agreed to defer Mr. Sullivan's buyout until Clean Seat was sold.[14] After Mr. Sullivan's dissociation, Mr. Tang continued the partnership business along with Andy Chang and Max Pounanov.[15] At some point, Mr. Tang caused the transfer of partnership assets to Cleana.[16] In October 2024, Mr. Tang sold Cleana to Kohler Co. for approximately

---

[6] *Id.* ¶¶ 13–15.
[7] *Id.* ¶¶ 16–20.
[8] *Id.* ¶¶ 25–28.
[9] *Id.* ¶¶ 20–21.
[10] *Id.* ¶¶ 6, 24.
[11] *Id.* ¶¶ 24, 79(a).
[12] *Id.* ¶¶ 31–34.
[13] *Id.* ¶ 44.
[14] *Id.*
[15] *Id.* ¶¶ 3–4, 45.
[16] *Id.* ¶ 46.

$10,000,000.[17] Mr. Sullivan has not received any compensation or accounting for his share of the partnership's value.[18]

On October 9, 2025, Mr. Sullivan filed his Complaint in Utah state court, asserting causes of action for accounting, breach of fiduciary duty, breach of contract, promissory estoppel, unjust enrichment, and declaratory judgment.[19] On December 11, 2025, Defendants removed the action to this court.[20] Mr. Tang then filed a motion to dismiss the claims against him for improper venue, insufficient process, and failure to state a claim under Rules 12(b)(3), 12(b)(4), and 12(b)(6) of the Federal Rules of Civil Procedure.[21] On February 10, 2026, Mr. Sullivan filed proof of service for Kevin Tang as an individual[22] and for Clean Seat via service on Kevin Tang as an owner.[23] Mr. Tang then filed a second motion to dismiss the claims against Clean Seat for insufficient process and insufficient service of process under Rules 12(b)(4) and (12)(b)(5).[24]

## STANDARD

Under Rule 12(b)(3), a party may move for dismissal due to "improper venue."[25] In a diversity action, 28 U.S.C.A. § 1391(b) grants the court venue in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.[26]

---

[17] *Id.* ¶ 47.
[18] *Id.* ¶ 49.
[19] *See generally id.*
[20] Notice of Removal, ECF No. 1, filed Dec. 11, 2025.
[21] Tang MTD 1.
[22] Summons Returned Executed as to Kevin Tang ("Tang Service"), ECF No. 16, filed Feb. 10, 2026.
[23] Summons Returned Executed as to Clean Seat ("Clean Seat Service"), ECF No. 17, filed Feb. 10, 2026.
[24] Clean Seat MTD 1.
[25] Fed. R. Civ. P. 12(b)(3).
[26] 28 U.S.C.A. § 1391(b).

When reviewing challenges based on improper venue, the court conducts a two-part analysis.[27] First, the court "examine[s] the nature of the plaintiff's claims and the acts or omissions underlying those claims."[28] Second, the court "determine[s] whether substantial 'events material to those claims occurred' in the forum district."[29] If venue is improper, the court must dismiss the case or, "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."[30]

Next, Rules 12(b)(4) and 12(b)(5) allow a defendant to defend against a claim on the grounds of insufficiency of process and insufficiency of service of process.[31] "A Rule 12(b)(4) motion constitutes an objection to the form of process or the content of the summons rather than the method of its delivery."[32] "A Rule 12(b)(5) motion . . . challenges the mode or lack of delivery of a summons and complaint."[33]

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[34] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as

---

[27] *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010).
[28] *Id.*
[29] *Id.* (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)).
[30] 28 U.S.C.A. § 1406(a).
[31] *Whitsell v. United States*, 198 F.3d 260 (10th Cir. 1999) (unpublished); *see also* Fed. R. Civ. P. 12(b)(4), (5).
[32] *Gallan v. Bloom Bus. Jets, LLC*, No. 19-CV-3050-WJM-SKC, 2020 WL 4904580 (D. Colo. Aug. 20, 2020) (quoting *Oltremari by McDaniel v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1349 (D. Kan. 1994)).
[33] *Id.*
[34] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (citing *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019)).
[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[36] Conclusory statements and legal conclusions are "not entitled to the assumption of truth."[37]

## DISCUSSION

### I.    Insufficient Process and Insufficient Service of Process

#### A.    Mr. Tang

Mr. Tang first argues that the claims against him should be dismissed for improper service on the grounds that Plaintiff initially attempted to serve him at a New Jersey address that was not his residence.[38] But this argument was premature. One statute governing removed cases is 28 U.S.C. § 1448, which states:

> "In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court."[39]

Further, Rule 4(m) of the Federal Rules of Civil Procedure gives plaintiffs 90 days to effect service after filing the complaint.[40] Thus, Mr. Sullivan had 90 days after this case was removed to effect service on Mr. Tang.[41]

---

[36] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1130–31 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (also quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002)) (cleaned up).
[37] *Iqbal*, 556 U.S. at 1951 (emphasis omitted).
[38] Tang MTD 19–21.
[39] 28 U.S.C.A. § 1448.
[40] Fed. R. Civ. P. 4(m).
[41] *See Wallace v. Microsoft Corp.*, 596 F.3d 703, 706 (10th Cir. 2010) (holding that the Rule 4(m) time limit for service begins to run from the date of removal from state court).

Mr. Tang filed his motion to dismiss a mere seven days after the action was removed to federal court. Even if Mr. Sullivan's service attempts in state court were initially defective, he successfully served Mr. Tang on February 6, 2026, well within the 90-day limit.[42]

### B.    Clean Seat

Mr. Sullivan also filed proof of service for Clean Seat showing that Clean Seat was served on February 6, 2026, by delivering the required summons and complaint to Mr. Tang as an owner.[43] Mr. Tang filed a motion to dismiss the claims against Clean Seat under Rule 12(b)(4) and 12(b)(5) on the grounds that the Clean Seat partnership no longer exists and that Mr. Tang cannot be served on its behalf.[44] Under both the Utah Rules of Civil Procedure and the Federal Rules of Civil Procedure, a partnership may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."[45] And in Utah, "[e]ach partner is an agent of the partnership for the purpose of its activities and affairs."[46] Thus, a partnership may be served in Utah by serving a partner as an agent on behalf of the partnership.

In this case, Mr. Sullivan attempted to serve Clean Seat via service on Mr. Tang as its owner and agent.[47] Mr. Tang argues that, even if he was a founding partner of Clean Seat, the partnership has ceased to exist as an entity, and he has no continuing role in any successor

---

[42] *See* Tang Service.
[43] Clean Seat Service 1.
[44] Clean Seat MTD 8.
[45] Fed. R. Civ. P. 4(h)(1)(B); Utah R. Civ. P. 4(d)(1)(E).
[46] Utah Code Ann. § 48-1d-301(1).
[47] *See* Clean Seat Service.

6

entity.[48] Mr. Sullivan contends that the partnership must still exist because he was never paid his buyout price, so any winding up could not have been completed.[49] But the allegations in the Complaint contradict Mr. Sullivan's argument. The Complaint asserts that the Clean Seat partnership was either converted or transferred into Cleana, which Mr. Sullivan refers to as a "successor entity to the Utah partnership."[50] And Cleana was sold to Kohler in October 2024.[51] Regardless of whether some successor entity to the Clean Seat partnership still exists, Mr. Sullivan's own allegations in the Complaint make it clear that Mr. Tang has no further role in that entity, having sold it in 2024. Therefore, the partnership successor entity cannot be served via Mr. Tang, and Plaintiff's attempted service was faulty.

Mr. Sullivan also argues that the Clean Seat Motion to Dismiss is procedurally defective because Mr. Tang already filed a motion to dismiss for improper service of process.[52] Under Rule 12(g), a party that makes a Rule 12 motion may not later make another Rule 12 motion "raising a defense or objection that was available to the party but omitted from its earlier motion."[53] Even though Mr. Tang made an earlier Rule 12 motion seeking dismissal of the claims against him as an individual, he was not served on behalf of Clean Seat until after that motion.[54] So the service arguments raised in the Clean Seat Motion were not available when Mr. Tang filed his first motion to dismiss, and they are not barred by Rule 12(g).

---

[48] Reply in Support of Clean Seat Motion to Dismiss ("Clean Seat Reply") 6, ECF No. 23, filed Apr. 23, 2026.
[49] Opposition to Clean Seat Motion to Dismiss ("Clean Seat Opp'n") 7, ECF No. 19, filed Mar. 26, 2026.
[50] Compl. ¶¶ 24, 79(a).
[51] *Id.* ¶ 47.
[52] Clean Seat Opp'n 13.
[53] Fed. R. Civ. P. 12(g)(2).
[54] *See* Clean Seat Service.

## II.    Venue

### A.    Improper Venue

Mr. Tang also argues that this case should be dismissed for improper venue.[55] Mr. Sullivan responds that a substantial portion of the partnership's formation and operation occurred in Utah.[56] In this case, the only possible ground for venue before this court is if "a substantial part of the events or omissions giving rise to the claim occurred" in Utah.[57] "Under that provision, venue is not limited to the district with the *most* substantial events or omissions."[58]

First, the court must examine "the nature of the plaintiff's claims and the acts or omissions underlying those claims."[59] The claim for breach of fiduciary duty alleges that Defendants breached a duty by transferring partnership assets and retaining proceeds from the Cleana sale.[60] The unjust enrichment claim alleges that Mr. Sullivan contributed substantial labor and capital towards creating the partnership's value and that Defendants improperly retained benefits, including sales proceeds, generated by his efforts.[61] The declaratory judgment claim asks the court to make a declaration that Plaintiff owned half of Clean Seat and its successor entities due to his efforts in building the partnership.[62] And the breach of contract and promissory

---

[55] Tang MTD 21.

[56] Opposition to Tang Motion to Dismiss ("Tang Opp'n") 21–23, ECF No. 10, filed Jan. 14, 2026. Mr. Sullivan also argues that the court lacks subject-matter jurisdiction because he and the partnership are both Utah citizens. *Id.* at 24. As already discussed, the Complaint does not allege facts showing that the partnership continues to exist, so it does not defeat diversity jurisdiction.

[57] 28 U.S.C.A. § 1391(b)(2).

[58] *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153, 1165 (10th Cir. 2010) (emphasis in original).

[59] *Id.*

[60] Compl. ¶ 60.

[61] *Id.* ¶¶ 71–77.

[62] *Id.* ¶ 79.

estoppel claims allege that Mr. Tang and Mr. Sullivan had an agreement that Mr. Sullivan would receive his share of the partnership when it was ultimately sold.[63]

Second, the court must determine whether substantial events material to these claims and their underlying acts occurred in the forum district.[64] "The substantiality requirement is satisfied upon a showing of 'acts and omissions that have a close nexus' to the alleged claims."[65] In this case, Mr. Sullivan's claims all arise to some extent from his alleged ownership interest in the Clean Seat partnership and his contributions to that partnership. The Complaint includes numerous allegations showing that the Clean Seat partnership was founded in Utah and that much of its initial funding came from Utah competitions and investors.[66] Even though the Complaint does not indicate where other material events occurred, like Mr. Sullivan's dissociation and the Cleana transfer and sale, the events surrounding Clean Seat's formation and early development occurred in Utah. These events have a close nexus to Plaintiff's claims because they form the basis for his alleged interest in the partnership. Thus, venue is proper in Utah.

### B.    Venue Transfer

Alternatively, Mr. Tang asks the court to transfer venue to the Eastern District of Wisconsin.[67] Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[68] To transfer venue under § 1404, the moving party must

---

[63] *Id.* ¶¶ 64–66.
[64] *Bartile Roofs, Inc.*, 618 F.3d at 1165.
[65] *Id.* (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003)).
[66] *See* Compl. ¶¶ 9–15, 25–30.
[67] Tang MTD 24.
[68] 28 U.S.C.A. § 1404(a).

9

establish that "(1) the transfer will enhance the convenience of the parties and witnesses, and is in the interest of justice; and (2) the transferee court is a proper forum in which the action could have been brought originally."[69] "The 'party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient,'" and "'[m]erely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue.'"[70] In considering a motion to transfer under § 1404(a), courts may weigh the following discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical.[71]

Here, Mr. Tang argues that venue is proper in Wisconsin because he resides there.[72] Mr. Tang further argues that transfer is justified because (1) he, a key witness, resides in Wisconsin, (2) the merits of the action do not tie it to Utah, (3) the proceeds of the sale that Plaintiff seeks are with Mr. Tang in Wisconsin, and (4) the dockets in Wisconsin are less congested.[73] Mr. Sullivan responds that his choice of forum is entitled to deference, especially where it has a

---

[69] *Questar Gas Mgmt. Co. v. USA Parts & Serv., LLC*, No. 2:05CV483DAK, 2006 WL 8435556, at *2 (D. Utah Jan. 26, 2006).

[70] *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Scheidt v. Klein,* 956 F.2d 963, 965–66 (10th Cir. 1992)).

[71] *Id.* quoting (*Chrysler Credit Corp. v. Country Chrysler, Inc*., 928 F.2d 1509, 1516 (10th Cir. 1991)).

[72] Tang MTD 25.

[73] *Id.* at 27–30.

strong factual and legal nexus to the suit.[74] He also argues that venue is not proper in Wisconsin.[75]

As an initial matter, it is unclear whether venue would be proper in the Eastern District of Wisconsin. Under 28 U.S.C. § 1391(b)(1), venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."[76] The proof of service for Mr. Tang shows that he resides in Sheboygan, Wisconsin,[77] so venue would be proper in Wisconsin if the partnership no longer exists and Mr. Tang is the sole defendant. But, as already discussed, it is not clear from the Complaint whether the partnership or some successor entity continues to exist or where it resides for purposes of venue.

Even assuming that venue is proper in Wisconsin for purposes of the § 1404(a) motion, Mr. Tang has not met his burden of establishing that the existing forum is inconvenient. Generally, "unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed."[78] Defendant argues that Plaintiff's choice of venue should be accorded "little weight" here because the facts underlying the lawsuit have no material connection to the chosen forum.[79] But that is not the case. As the court already explained, the Complaint alleges that numerous material events relating to the formation and growth of the alleged partnership occurred in Utah. This also indicates that witnesses and evidence related to the existence and value of the alleged partnership may be more accessible in Utah. Thus, several factors, including Plaintiff's choice of forum, the proximity to relevant witnesses and evidence,

---

[74] Tang Opp'n 24.
[75] *Id.*
[76] 28 U.S.C.A. § 1391(b)(1).
[77] *See* Tang Service.
[78] *Bartile Roofs, Inc.*, 618 F.3d at 1167 (quoting *Scheidt,* 956 F.2d at 965).
[79] Tang MTD 27; *see also Bartile Roofs, Inc.*, 618 F.3d at 1168.

and the fact that material events underlying Plaintiff's claims occurred in the forum make Utah a convenient venue.

In contrast, Mr. Tang has not demonstrated that the Eastern District of Wisconsin would be substantially more convenient. He identifies only himself as a witness that resides in Wisconsin.[80] And though it is not clear whether Utah law would govern certain claims, like the breach of contract allegation, Mr. Tang offers no arguments indicating that Wisconsin law would govern beyond his assertion that the proceeds from the sale are located with him in Wisconsin.[81] These factors are neutral at best. Finally, Defendant's arguments regarding congested dockets show that the Eastern District of Wisconsin may have a smaller caseload than the District of Utah.[82] This would favor transfer, but only slightly. On balance, Utah, where Plaintiff brought his claims and where many material events related to the underlying facts of the case occurred, is a convenient venue. Mr. Tang has not demonstrated that the Eastern District of Wisconsin, which has little connection to the case beyond the fact that Mr. Tang currently resides there, is substantially more convenient. The request to transfer venue is denied.

## III.    Failure to State a Claim

Defendant next moves to dismiss Plaintiff's claims for failure to state a claim under a variety of different theories.

### A.    Existence of a Partnership

Mr. Tang broadly argues that the Complaint fails to adequately plead the existence of a partnership or that Mr. Sullivan had a 50% interest in that partnership.[83] In Utah, "the association

---

[80] Tang MTD 27.
[81] *Id.* at 29.
[82] *Id.* at 30.
[83] *Id.* at 13.

12

of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership."[84] Here, the Complaint includes facts showing that Mr. Sullivan and Mr. Tang formed Clean Seat for the purpose of developing a specific product,[85] jointly and publicly pitched their business at startup competitions,[86] and referred to each other as partners and co-founders in communications with mentors and potential investors.[87] Such allegations are more than adequate to plausibly allow a reasonable inference that Mr. Sullivan and Mr. Tang associated together as co-owners of Clean Seat, a business for profit.

Defendant also argues that the Complaint does not adequately allege that Mr. Sullivan is entitled to a 50% share of the partnership.[88] But even assuming arguendo that the Complaint does not plead facts that would allow an exact calculation of partnership interests, such a calculation would go to damages, not liability. Mr. Sullivan's claims only require that he adequately allege some interest in a partnership with Mr. Tang. The Complaint does so.

### B.    Continuing Partnership Interest

Mr. Tang next argues that claims other than the breach of contract claim are generally barred because they wrongly presume that Mr. Sullivan retained an interest in the partnership assets after he dissociated and the assets transferred to Cleana.[89] Plaintiff responds that he seeks the value of partnership assets that were developed before his dissociation and that Defendant

---

[84] Utah Code Ann. § 48-1d-202(1).
[85] Compl. ¶ 9.
[86] *Id.* at ¶¶ 10–12
[87] *Id.* at ¶¶ 13, 15, 16, 18.
[88] Tang MTD 14.
[89] *Id.* at 5–7.

can be liable for violating his right even after dissociation.[90] He further argues that the creation of Cleana as a successor entity did not eliminate the obligations that Mr. Tang and the partnership owed him.[91]

As Mr. Sullivan points out, Utah law requires partnerships to purchase a dissociated partner's interest in the partnership at the time of dissociation.[92] "The buyout price of the interest of a person dissociated as a partner is the amount that would have been distributable to the person . . . if, on the date of dissociation, the assets of the partnership were sold and the partnership were wound up."[93] Taking the allegations in the Complaint as true, on the date Mr. Sullivan dissociated, the partnership was statutorily obligated to pay him the value of his interest in the partnership. But Mr. Sullivan, Mr. Tang, and the partnership agreed to defer this buyout until after Clean Seat was sold.[94] Plaintiff's claims do not all presume, as Mr. Tang argues, that Mr. Sullivan had any ongoing interest in the partnership assets after his dissociation. Rather, the Complaint claims that the partnership and partners owed Mr. Sullivan a statutory and contractual obligation to pay his buyout price upon the sale and that they failed to do so.[95] In Utah, "all partners are liable jointly and severally for all debts, obligations, and other liabilities of the partnership."[96] Such liability is not discharged upon a person's later dissociation from the partnership.[97] Therefore, Mr. Sullivan's claims against Mr. Tang do not all improperly assert an interest in partnership assets following Mr. Sullivan's dissociation; rather, many of the claims

---

[90] Tang Opp'n 8.
[91] *Id.* at 12.
[92] Utah Code Ann. § 48-1d-801(1).
[93] *Id,* at § 48-1d-801(2).
[94] Compl. ¶ 44.
[95] *See id.* ¶¶ 54–56.
[96] Utah Code Ann. § 48-1d-306(1).
[97] Utah Code Ann. § 48-1d-803(1).

14

seek payment of a partnership obligation incurred at dissociation, the value of which was fixed at that time.

### C.    Breach of Fiduciary Duty

Mr. Tang also argues that all non-contractual claims should be dismissed because he owed Mr. Sullivan no fiduciary duties after Mr. Sullivan's dissociation. "A partner owes to the partnership and the other partners the duties of loyalty and care," including a duty to refrain from engaging in "reckless conduct, intentional misconduct, or a knowing violation of law."[98] When a person dissociates as a partner, "the person's right to participate in the management and conduct of the partnership's activities and affairs terminates."[99] Mr. Tang interprets these provisions to mean that Plaintiff "lacks a legally protectible interest in claims based on partnership activities and affairs after his dissociation."[100]

The existence of a fiduciary duty is a necessary element to state a claim for breach of fiduciary duty. "To prove a breach of fiduciary duty claim, a plaintiff must demonstrate that the defendant owed a duty, the defendant breached the duty, the plaintiff suffered damages, and the plaintiff's damages were actually and proximately caused by the defendant's breach."[101] Here, Plaintiff alleges that Defendants owed him fiduciary duties because of his status as a Clean Seat partner and that they breached those duties by excluding Plaintiff, transferring partnership assets to Cleana, appropriating the patents and sales opportunities, and retaining the sales proceeds.[102] Following his dissociation, Mr. Sullivan had no further right to conduct the partnership's

---

[98] Utah Code Ann. § 48-1d-405(1), (3).
[99] Utah Code Ann. § 48-1d-703(2)(a).
[100] Tang MTD 7.
[101] *Giles v. Min. Res. Int'l, Inc.*, 2014 UT App 259, ¶ 6, 338 P.3d 825, 827.
[102] Compl. ¶¶ 58–60.

15

activities, and he has pled no facts showing that Mr. Tang had any duties toward him in managing the partnership's affairs. Plaintiff does not allege facts showing that Mr. Tang had any fiduciary duty to include him in the partnership, to refrain from transferring partnership assets, or to utilize the patents and sales opportunities in any particular way. Thus, these actions cannot form the basis for a breach of fiduciary duty claim.

However, Mr. Sullivan does plead facts showing that Mr. Tang owed him a statutory duty to pay the required buyout price and that the parties agreed to defer that payment until the sale of the partnership. Had Mr. Sullivan immediately demanded the buyout he was owed upon his dissociation, there is little doubt that the transaction would have qualified as an act "in the conduct . . . of the partnership's activities and affairs" for which Mr. Tang owed Mr. Sullivan fiduciary duties from one partner to another.[103] But the dissociation buyout statute specifically provides that any action to determine the buyout price or related obligations "must be commenced not later than 120 days after the partnership has tendered payment or an offer to pay or within one year after written demand for payment if no payment or offer to pay is tendered."[104] This suit was filed over four years after Mr. Sullivan's dissociation, so it is untimely under the dissociation buyout statute. Because Plaintiff's requested relief can only come from contractual or equitable claims rather than as a statutory right based on his partner status, the Complaint fails to plead facts showing that Mr. Tang owed Mr. Sullivan any fiduciary duties related to the eventual Cleana sale.

---

[103] *See* Utah Code Ann. § 48-1d-405(1), (3).
[104] Utah Code Ann. § 48-1d-801(9).

16

#### D.       Breach of Contract

Mr. Tang argues that Plaintiff has not sufficiently pled the existence of an oral contract relating to the sale proceeds because the Complaint contains no facts showing the details of the agreement, the essential terms, or any method of calculation.[105] The elements of a breach of contract claim are "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[106] "To form an enforceable contract, the parties must have a 'meeting of the minds . . . on the essential terms of the contract.'"[107] "A contract may be enforced even though some contract terms may be missing or left to be agreed upon, but if the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract."[108] In sum, "[c]ontractual terms are 'sufficiently definite' when they are 'capable of being enforced.'"[109]

In this case, the Complaint includes sufficient facts to plausibly allege the existence of an enforceable oral contract with definite terms. The Complaint states that, in April 2021, Mr. Sullivan gave notice of his dissociation from the partnership, and his statutory buyout rights triggered.[110] However, Mr. Sullivan and Mr. Tang made an oral agreement to defer the buyout, stating that Mr. Sullivan would receive the price of his interest when the partnership was sold.[111] Contrary to Mr. Tang's argument that these contractual allegations are merely conclusory and

---

[105] Tang MTD 15–16.

[106] *Daz Mgmt., LLC v. Honnen Equip. Co.*, 2022 UT 15, 508 P.3d 84, 91 n.26 (quoting *Richards v. Cook,* 2013 UT App 250, ¶ 7, 314 P.3d 1040).

[107] *Bloom Master Inc. v. Bloom Master LLC*, 2019 UT App 63, ¶ 13, 442 P.3d 1178, 1182 (quoting *Jones v. Mackey Price Thompson & Ostler*, 2015 UT 60, ¶ 31, 355 P.3d 1000).

[108] *Goggin v. Goggin*, 2011 UT 76, ¶ 37, 267 P.3d 885, 893 (quoting *Nielsen v. Gold's Gym,* 2003 UT 37, ¶ 11, 78 P.3d 600).

[109] *Bloom Master*, 442 P.3d at 1182 (quoting *ACC Capital Corp. v. Ace West Foam Inc.*, 2018 UT App 36, ¶ 12, 420 P.3d 44).

[110] Compl. ¶ 44.

[111] *Id.*

17

lack a method of calculating the amount due,[112] their factual context supplies terms that are capable of being enforced.

The alleged agreement is between Mr. Sullivan and Mr. Tang as an agent of the partnership. They agreed that Mr. Sullivan would defer asserting his statutory buyout rights and that the partnership would pay those rights when it was sold.[113] The amount to be paid is described as Mr. Sullivan's "buyout price."[114] The term "buyout price" does not appear to be an indefinite substitution for the statutory amount as Mr. Tang argues.[115] The statutory "buyout price" calculation describes the method of determining what a dissociating partner is owed at the time of dissociation.[116] By expressly deferring Mr. Sullivan's buyout and agreeing that he would receive his "buyout price" when Clean Seat was sold, the parties incorporated the statutory definition into their oral agreement. Thus, the alleged contract states that, upon the sale of Clean Seat, Mr. Tang and the partnership were to pay Mr. Sullivan "the amount that would have been distributable to [Mr. Sullivan] under Subsection 48-1d-906(2) if, on the date of dissociation, the assets of the partnership were sold and the partnership were wound up."[117] For pleading purposes, these terms are sufficiently definite. Plaintiff adequately alleges a contract that is capable of being enforced.

---

[112] Tang MTD 16.
[113] Compl. ¶ 44.
[114] *Id.*
[115] *See* Tang MTD 16.
[116] Utah Code Ann. § 48-1d-801(1).
[117] *Id.* at § 48-1d-801(2).

18

### E.      Equitable Claims

The Complaint also includes claims for promissory estoppel and unjust enrichment.[118] These are equitable remedies under Utah law.[119] Mr. Tang argues that these claims are not adequately pled because the Complaint asserts the existence of an enforceable contract and fails to allege the non-existence of a valid remedy at law.[120] Mr. Sullivan responds that his equitable claims are not barred by the economic loss doctrine because they seek disgorgement of wrongfully retained property rather than contractual damages.[121] But this only addresses part of the basis for Defendant's argument. Though Mr. Tang argues that the breach of fiduciary duty claim is barred by the economic loss doctrine,[122] he more broadly contends that the Complaint fails to plead the lack of an adequate remedy at law, an essential element of equitable claims.[123]

The economic loss rule requires that, "when a conflict arises between parties to a contract regarding the subject matter of that contract, the contractual relationship controls, and parties are not permitted to assert actions in tort."[124] Additionally, in Utah "the law will not imply an equitable remedy when there is an adequate remedy at law."[125] These doctrines are distinct. The economic loss rule focuses on whether a specific alleged tort is also a breach of a contract by

---

[118] Compl. ¶¶ 63–77.

[119] *Thorpe v. Washington City*, 2010 UT App 297, ¶ 27, 243 P.3d 500, 507 ("[A]n unjust enrichment claim is an equitable remedy."); *Volonte v. Domo, Inc.*, 2023 UT App 25, ¶ 49, 528 P.3d 327, 341 (quoting *E & H Land, Ltd. v. Farmington City*, 2014 UT App 237, ¶ 29, 336 P.3d 1077) ("Promissory estoppel is an equitable claim for relief that compensates a party who has detrimentally relied on another's promise.").

[120] Tang MTD 12–13.

[121] Tang Opp'n 19.

[122] Tang MTD 11.

[123] *Id.* at 13.

[124] *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 12, 435 P.3d 193, 196 (quoting *Reighard v. Yates*, 2012 UT 45, ¶ 20, 285 P.3d 1168).

[125] *Thorpe v. Washington City*, 2010 UT App 297, ¶ 28, 243 P.3d 500, 507 (quoting *UTCO Assocs., Ltd. v. Zimmerman*, 2001 UT App 117, ¶ 19, 27 P.3d 177, *cert. denied*, 32 P.3d 249 (Utah 2001)).

asking whether a duty exists independent of the parties' contractual obligations.[126] But the equitable remedy doctrine states that, when any legal remedy exists to make a plaintiff whole, the law will not also imply equitable remedies.[127] Thus, even if Plaintiff's equitable claims here do not arise out of the contract or seek contractual damages, the Complaint must still "affirmatively show a lack of an adequate remedy at law" on its face.[128]

The Complaint here fails to do so. It does not include facts or allegations pleading the non-existence of a binding contract or a lack of another adequate remedy at law. On the contrary, it asserts that contractual and statutory remedies exist to make Mr. Sullivan whole and secure the value of his alleged partnership interest.[129] Of course, a plaintiff may plead contractual and equitable claims in the alternative. For example, "a plaintiff who believes it is entitled to relief under a contract is free to assert both breach of contract and promissory estoppel claims in a complaint."[130] But, "[w]hile a plaintiff is permitted to plead a breach of contract claim and an equitable claim in the alternative, the plaintiff must still sufficiently plead facts to support each of the claims asserted in the Complaint."[131] Here, the Complaint fails to state that its equitable claims are pled in the alternative or to allege in those claims the lack of an adequate remedy at law. In such absence, Plaintiff fails to state a claim for the equitable remedies of unjust enrichment and promissory estoppel.

---

[126] *See Healthcare Co. v. MPI Grp. LLC*, No. 1:25-CV-00031-DBB-CMR, 2025 WL 2810630, at *11 (D. Utah Oct. 2, 2025) (unpublished).

[127] *Thorpe*, 243 P.3d at 507.

[128] *Id.* (quoting *Ockey v. Lehmer,* 2008 UT 37, ¶ 44 n. 42, 189 P.3d 51); *see also ClearOne, Inc. v. RSM US LLP*, No. 2:16-CV-00736-DN, 2017 WL 923949, at *11 (D. Utah Mar. 6, 2017) (quoting *Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1228, 1238 (D. Utah 2015)) ("As a prerequisite to bringing [an equitable claim], the plaintiff must establish that the parties do not have a formal contract controlling their rights and obligations.") (alteration in original).

[129] *See generally* Compl.

[130] *E & H Land, Ltd. v. Farmington City*, 2014 UT App 237, ¶ 30, 336 P.3d 1077, 1087.

[131] *ClearOne, Inc.*, 2017 WL 923949, at *10.

### F.    Accounting

Mr. Tang next challenges Plaintiff's accounting claim.[132] In Utah, an accounting claim is "a legal action to compel a defendant to account for and pay over money owed to the plaintiff but held by the defendant."[133] An accounting claim may be legal or equitable depending on the facts alleged.[134] When a plaintiff claims that a defendant "unjustly retained funds to which it was not entitled" and has exclusive control of records and accounts necessary to ascertain the amount of those funds, an equitable accounting claim may be appropriate.[135] As with other equitable remedies, an accounting claim may only be maintained in the "absence of an adequate remedy at law."[136] Absent statutory authority, accounting is "not an independent legal cause of action when it is sought in connection with a tort or contractual claim for damages."[137]

Mr. Tang argues that Plaintiff cannot seek equitable accounting because the Complaint fails to allege the absence of an adequate remedy at law.[138] For the same reasons discussed above with regard to the unjust enrichment and promissory estoppel claims, the Complaint does not state a claim for equitable accounting. Mr. Tang also argues that accounting claim cannot be an independent legal cause of action because Mr. Sullivan has not identified a statute that would allow such a claim over four years after the dissociation occurred.[139] Plaintiff briefly responds that accounting is expressly contemplated by Utah Code § 48-1d-801.[140]

---

[132] Tang MTD 17–18.

[133] *Failor v. MegaDyne Med. Prods., Inc*., 2009 UT App 179, ¶ 13, 213 P.3d 899, 905 (quoting BLACK'S LAW DICTIONARY 19 (7th ed. 1999)).

[134] *Id.* at 905.

[135] *Id.* at 905–06.

[136] *Id.* at 905 (quoting *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 478 (1962)).

[137] *King v. XPO Logistics, Inc.*, No. 2:16-CV-434-DN, 2017 WL 213791, at *4 (D. Utah Jan. 18, 2017) (unpublished).

[138] Tang MTD 18–19.

[139] *Id.* at 18.

[140] Tang Opp'n 14.

21

Though this provision does allow a dissociated partner to "maintain an action against the partnership . . . to determine the buyout price of that person's interest," such an action must be brought no later than 120 days or one year after the dissociation depending on the circumstances.[141] Mr. Sullivan's claims fall outside this time period, so his accounting claim cannot originate under the statute. In the absence of a statutory basis, an accounting claim sought in connection with a contractual claim for damages is not an independent legal cause of action.[142] Therefore, the Complaint fails to state an independent claim for accounting, though accounting may still be a potential remedy under Mr. Sullivan's contract claim.[143]

### G.    Declaratory Judgment

Finally, Mr. Tang argues that the Complaint fails to state a claim for declaratory judgment for many of the same reasons previously argued in the context of other claims.[144] Specifically, Mr. Tang contends that this claim fails because Plaintiff does not allege the existence of a partnership or of an oral agreement.[145] As was already discussed, the Complaint does adequately allege those elements. But Defendant also argues that the Complaint improperly assumes that Mr. Sullivan had a continuing interest in the partnership assets after his dissociation.[146] Again, as discussed above, many of Plaintiff's claims assert that Mr. Tang and the partnership owe Mr. Sullivan the value of his partnership interest at the moment of his dissociation based on Utah statutes and an oral agreement to that effect.[147]

---

[141] Utah Code Ann. § 48-1d-801(9).
[142] *King*, 2017 WL 213791, at *4.
[143] *See id.* at *5.
[144] Tang MTD 19.
[145] *Id.*
[146] *Id.*
[147] *See supra* section 3.B.

22

However, the claim for declaratory judgment seeks declarations that Cleana is a successor vehicle to the partnership and that "Plaintiff owns a 50% partnership interest in" Cleana, Inc.[148] The latter declaration asserts a continuing percentage interest in the partnership's successor entity after Mr. Sullivan's dissociation rather than just entitlement to a specific buyout value from Mr. Tang and the partnership. As Mr. Tang argues, the Complaint does not include facts that plausibly show he has any such continuing interest. Rather, the Complaint asserts that Mr. Sullivan dissociated from the partnership in 2021,[149] which would terminate his right to participate in the management and conduct of the partnership.[150] In the absence of any facts from which it could be inferred that Plaintiff had a continuing interest in the partnership and its successor entities following his dissociation, this aspect of the declaratory judgment claim fails.

Mr. Tang also contends that the declaratory judgment claim is barred by the statute of limitations.[151] For declaratory judgment claims that seek declarations of rights not governed by a specific statute of limitations, Utah's general four-year statute of limitations for "relief not otherwise provided for by law applies."[152] Defendant argues that the statute of limitations for a declaration that Cleana is the successor to the Clean Seat partnership began to run when Cleana was created in April 2020 or, at the latest, when Mr. Sullivan dissociated in April 2021.[153] However, it is not clear from the face of the Complaint whether Cleana allegedly became the partnership successor entity when it was created or when Clean Seat's assets were transferred.

---

[148] Compl. ¶ 79.

[149] Compl. ¶ 44.

[150] Utah Code Ann. § 48-1d-703(2).

[151] Tang MTD 11.

[152] *See Quick Safe-T Hitch, Inc. v. RSB Sys. L.C.*, 2000 UT 84, ¶ 15, 12 P.3d 577, 579; Utah Code Ann. § 78B-2-307(4).

[153] Tang MTD 9–10.

And the Complaint does not say exactly when the alleged asset transfer occurred.[154] Thus, it is not clear from the face of the Complaint when the potential conflict regarding partnership successor entities arose,[155] so it is not barred by the statute of limitations at this stage.[156]

## ORDER

Defendants' [18] Motion to Dismiss is GRANTED in part for improper service. Defendant Tang's [7] Motion to Dismiss is GRANTED in part and DENIED in part. The claims for accounting, breach of fiduciary duty, equitable estoppel, unjust enrichment, and declaratory judgment in part are DISMISSED without prejudice against Defendant Tang.

Signed June 9, 2026.

BY THE COURT

David Barlow
United States District Judge

---

[154] Compl. ¶ 46.

[155] *See Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022) (quoting *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016)) (A statute of limitations defense may only be resolved on a motion to dismiss "when the dates given in the complaint make clear that the right sued upon has been extinguished.").

[156] Defendant makes some additional arguments in his motion to dismiss, including that all non-contractual claims are barred by the statute of limitations, *see* Tang MTD 8–11, and that the fiduciary duty claim is barred by the economic loss doctrine, *id.* at 11–12. Because these causes of action independently fail for other reasons, the court does not address Defendant's remaining arguments.